

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-13-2006

# Eshak v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3063

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Eshak v. Atty Gen USA" (2006). *2006 Decisions.* Paper 749.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/749

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No.  05-3063

NABIL SADEK MEAWAD ESHAK,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

On Petition for Review of an Order of
The Board of Immigration Appeals
Immigration Judge:  Honorable Daniel A. Meisner
(No. A95-829-977)

Submitted Under Third Circuit LAR 34.1(a)
April 20, 2006

Before: SLOVITER and AMBRO, <u>Circuit Judges</u>,
and DuBOIS,[*] <u>District Judge</u>

(Opinion filed: July 13, 2006)

OPINION

_____

[*]Honorable Jan E. DuBois, Senior District Judge for the Eastern District of
Pennsylvania, sitting by designation.

AMBRO, <u>Circuit Judge</u>

Nabil Eshak petitions for review of a decision of the Board of Immigration Appeals (BIA or Board) denying his motion to remand and affirming the denial by the Immigration Judge (IJ) of Eshak's claims for withholding of removal pursuant to 8 U.S.C. § 1231(b)(3) and relief under Article III of the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman, or Degrading Treatment or Punishment (CAT).[1] Eshak asserts that (a) the IJ's decisions were not based on substantial evidence, and (b) the BIA abused its discretion in denying his motion. For the reasons below, we grant his petition in part and remand for proceedings consistent with this opinion.

## I.

Eshak is a Coptic Christian and a native and citizen of Egypt. He claims he was subjected to three separate attacks in Egypt because of his religion.[2] In January 1994, he was attacked by members of an Islamic group, identified in the record as Gamaat Islamia, who beat him, spat on him, cursed Christianity, and warned him about his discussion of Christianity with a Muslim coworker who had expressed interest in the Bible. Pedestrians intervened and halted the attack, and Eshak reported the incident to the police.

Less than a month later, on February 10, Eshak was returning from church with his

---

[1]G.A. Res 39/46, U.N. GAOR, 39th Sess., Supp. No. 51, at 197, U.N. Doc. A/39/51 (1984).

[2]For the purposes of our review, we present the facts as alleged by Eshak.

fianceé when they were set upon by four members of Gamaat Islamia. He was beaten and his fianceé was slashed with a knife across her cheek, leaving a scar. Eshak again reported the incident to the police, but the officers never spoke with him about the matter again, despite his repeated inquiries, nor did they arrest anyone.

The third attack occurred on March 15 of the same year. Eshak was getting off of a bus on his return home from work when members of Gamaat Islamia screamed at him, called him an infidel, and beat him with an iron bat. They opened a wound on his leg and caused him to hit his head violently on the ground. Pedestrians again intervened, and Eshak went to the hospital for medical treatment. He was confined to his home for six weeks while he recovered from the attack. Police said they would take care of the matter and promised to call Eshak, but he never heard from them.

After the third attack, Eshak began receiving phone calls threatening that he would be killed if he continued to serve and work in his church and demanding that he and his fianceé convert to Islam. The record also contains a document that appears to be a death sentence issued for Eshak by the Gamaat Islamia, stating "[h]is blood is made permissible to be shed starting today and the members of the Gamaat Islamia are to execute this sentence." App. at 61.

Eshak left Egypt and arrived in the United States as a nonimmigrant visitor for pleasure on August 5, 1994. His visa required him to leave the United States by February 4, 1995, but he stayed beyond that date without permission from the Immigration and

Naturalization Service (INS),[3] and was subsequently served with a notice to appear for overstay in violation of 8 U.S.C. § 1227(a)(1)(B). Approximately five months after being served, and nine years after arriving in the United States, Eshak filed an application for political asylum, withholding of removal, and relief under CAT. He later conceded through counsel that he was ineligible for asylum because of the failure to comply with the one-year filing deadline, codified at 8 U.S.C. § 1158(B), but he continued to seek relief on the withholding and CAT claims.

In December 2003, the IJ denied Eshak's application for withholding of removal on the ground that, even assuming the claim and Eshak's testimony were credible, he failed to establish, *inter alia*, that the government of Egypt was unwilling or unable to help him. The IJ also denied Eshak's CAT claim, stating there was no evidence that he had ever been tortured in Egypt by the government or with its acquiescence.

Eshak appealed the IJ's decision to the BIA and, during the pendency of his appeal, filed a motion with the Board to remand for consideration of additional evidence pursuant to 8 C.F.R. § 1003.2(c). Specifically, he requested remand based on an affidavit by Dr. Paul Marshall, a Senior Fellow at the Center for Religious Freedom at Freedom House, and an expert on religious persecution worldwide.

The BIA affirmed the IJ's decision in May 2005, agreeing that Eshak had "not

---

[3]On March 1, 2003, the functions of the INS were transferred to the United States Department of Homeland Security ("DHS"). *See Knapik v. Ashcroft*, 384 F.3d 84, 86 n.2 (3d Cir. 2004) (citing Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 441, 451 & 471, 116 Stat. 2135, codified at 6 U.S.C. §§ 251, 271 & 291).

established that it is more likely than not that he would be persecuted or tortured upon return to his native Egypt." In the same order it denied the motion to remand, concluding that "[t]he evidence submitted in conjunction with the motion does not suggest that the conditions in Egypt have changed so as to demonstrate *prima facie* eligibility for removal." Eshak filed a timely petition for review.[4]

## II.

**A.     The BIA's affirmance of the IJ's denial of withholding of removal and CAT relief**

We review the BIA's affirmance of an IJ's factual findings, including its determination of whether an applicant has met the standard for relief from removal, under a substantial evidence standard. *Tarrawally v. Ashcroft*, 338 F.3d 180, 186 (3d Cir. 2003). In conducting this analysis, we consider the record as a whole and reverse only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Zheng v. Gonzales*, 417 F.3d 379, 381 (3d Cir. 2005). Although our review is deferential, "[i]f the administrative record fails to reveal that [material] evidence has been fairly considered, the proper course is to remand the case to the INS so that the Service may evaluate such evidence and consider its effect on the application as a whole." *Sotto v. I.N.S.*, 748 F.2d 832, 837 (3d Cir. 1984); *see also Tipu v. I.N.S.*, 20 F.3d

---

[4] We have jurisdiction to review final orders of removal under 8 U.S.C. § 1252(a)(1). When, as here, the BIA adopts the IJ's opinion, we review the IJ's decision. *Gao v. Ashcroft*, 299 F.3d 266, 271 (3d Cir. 2002).

580, 583 (3d Cir. 1994) ("this Court has concluded that a decision of the BIA may be remanded if it fails adequately to consider the evidence in the record which favors an applicant").

Withholding of removal is a mandatory form of relief if the Attorney General decides that the alien's life or freedom would be threatened in a particular country on account of enumerated grounds, including the alien's religion. 8 U.S.C. § 1231(b)(3)(A). An alien can establish eligibility for withholding by demonstrating either past persecution or by showing that "it is more likely than not that he or she would suffer" a "future threat to life or freedom" on the basis of, *inter alia*, his or her religion. 8 C.F.R. § 208.16 (b)(1)(i) and (iii). The persecution that the alien fears must be committed by the government or forces that government is unwilling or unable to control. *Vente v. Gonzales*, 415 F.3d 296, 302 n.5 (3d Cir. 2005). The CAT prohibits the removal of an alien who can show it is more likely than not that he will be tortured by the government (or with its acquiescence) upon removal to a particular country. *Abdulrahman v. Ashcroft*, 330 F.3d 587, 591 n.2 (3d Cir. 2003); 8 C.F.R. § 208.16(c)(2). The regulations define torture as "an extreme form of cruel and inhuman treatment." 8 C.F.R. § 208.18(a)(2).

We conclude that the IJ's denial of Eshak's withholding of removal and CAT claims was not supported by substantial evidence, insofar as the IJ failed to discuss the apparent death threat against Eshak issued by Gamaat Islamia. The IJ stated only that

6

Eshak "said that he got a threatening letter before he departed Egypt," and the BIA did not mention the letter at all. "To determine whether the administrative action was arbitrary, the courts must be apprised why evidence, relevant and persuasive on its face, was discredited." *Soto*, 748 F.2d at 837. The failure of the IJ to discuss the letter, in light of the serious nature of the threat it contained, makes it impossible for our Court to affirm the denial of withholding of removal. "We recognize that there is a possibility that the immigration judge or the Board may choose to discredit the [letter] for reasons that are within their expertise. However, if they do not articulate such reasons, we are unable to discharge our statutory obligation of review." *Id.*

We accordingly reverse the IJ's denial of withholding of removal and relief under CAT and remand to the Board so that it may "fully assess this evidence in the context of all of the evidence." *Sotto*, 748 F.2d at 837; *see also Gao v. Ashcroft*, 299 F.3d 266, 277 (3d Cir. 2002) (holding it was "reversible error for the IJ to fail to evaluate and discuss" evidence with "high probative value").

## B. The BIA's denial of Eshak's motion to remand

"We treat the motion styled as a 'motion to remand' as a motion to reopen since it requires reopening the proceedings." *Shardar v. Ashcroft*, 382 F.3d 318, 325 n.4 (3d Cir. 2004). We review the BIA's denial of the motion to reopen (or remand) for abuse of discretion. *Id.* at 324. Under this standard, "the Board's decision must be reversed if it is arbitrary, irrational, or contrary to law." *Sevoian v. Ashcroft*, 290 F.3d 166, 175 (3d Cir.

7

2002).

"A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1). Furthermore, such a motion "must establish *prima facie* eligibility for [the requested relief]." *Guo v. Ashcroft*, 386 F.3d 556, 563 (3d Cir. 2004). This standard requires a petitioner to "produce objective evidence showing a reasonable likelihood that he can establish that he is entitled to relief." *Id.* (internal quotation marks, modifications, and citations omitted).

Eshak asserts that "[s]ince the affidavit is dated December 29, 2004, it clearly was not available at the time of [his] hearing on December 2, 2003." This statement misapprehends the requirements of 8 C.F.R. § 1003.2(c)(1); the question is not whether the affidavit was *executed* after the hearing, but whether it could not have been *discovered or presented* at that time. Nothing in the record suggests that the substance of Dr. Marshall's affidavit could not have been presented at the time of the hearing.

Eshak also implies that the affidavit discusses relevant events in Egypt that occurred after the hearing. Our review of the affidavit, however, indicates that the few post-December 2, 2003 events that are described in it do not support a conclusion that the threats to the safety of Christians in Egypt have escalated since the time of Eshak's hearing, only that the same threats present at the time of the hearing continue to exist. The BIA's decision to deny the motion to remand was accordingly not an abuse of

8

discretion.

* * * * *

For the reasons stated above, we affirm the BIA's denial of Eshak's motion to remand, but grant the petition as to his claims for withholding of removal and relief under the CAT and remand those claims for proceedings consistent with this opinion.