

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-24-2006

# Kudgoian v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3188

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Kudgoian v. Atty Gen USA" (2006). *2006 Decisions.* Paper 709.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/709

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-3188

ZARIK KUDGOIAN,
Petitioner

v.

ATTORNEY GENERAL
OF THE UNITED STATES,
Respondent

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A96-155-252)

Submitted Under Third Circuit LAR 34.1(a)
July 13, 2006

Before: SLOVITER, McKEE and RENDELL, Circuit Judges.

(Filed:  July 24, 2006)

OPINION OF THE COURT

RENDELL, Circuit Judge.

Zarik Kudgoian, a 58-year old Armenian woman who was born in and is a citizen

of Georgia, petitions for review of the Board of Immigration Appeals' denial of her

application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") with respect to Georgia. Kudgoian was granted withholding of removal and protection under the CAT with respect to Armenia. In her petition for review, Kudgoian argues, *inter alia*, that the BIA should have granted her asylum as to Georgia based on imputed political opinion and nationality and that it erred in not considering evidence she submitted after the close of her immigration hearing.

## I.

In her asylum application, Kudgoian stated that, after the collapse of the Soviet Union, Armenians became "targets for the Georgian nationalist movement." App. 476. She and her husband were both fired from their jobs and her husband was attacked in the street and severely beaten by Georgian "patriots." App. 477. Kudgoian's husband had established a group called the "Djavachk group" and was politically active in a movement to unite Armenians in Javakh, land that had been Armenian but became Georgian in 1923. App. 268, 271-74. The attack on her husband followed a rally about the persecution and discrimination of Armenians. App. 268-69. She stated that, because he was Armenian, hospital personnel reluctantly checked him into the hospital and he was left without medical assistance until he died. Kudgoian and her daughter then fled Georgia to Armenia where they had relatives. They feared being killed if returned to Georgia on account of their Armenian ethnicity. Kudgoian testified that her husband had been warned by Georgian nationalists that his family would be destroyed if he continued

2

his rallies and meetings. App. 278, 282-83. However, she admitted that she had not been personally threatened while living in Georgia, although her husband was. App. 310.

Once she arrived in Armenia, Kudgoian joined the People's Party of Armenia and began openly criticizing the Armenian government. On November 7, 2001, she gave a speech about the horrible conditions for refugees in Armenia, and accused the Armenian president of orchestrating the murder of another politician, Karen Demirchian. App. 245-46. Kudgoian was arrested and interrogated by the local Internal Affairs Department. While in detention, she was interrogated and "sadistically" beaten by two officers. As a result of her beating, including a hard blow to the head, Kudgoian was hospitalized for nine days. After her hospitalization, Kudgoian fled to Moscow and then to the United States.

## II.

With respect to Armenia, the IJ found that, because Kudgoian is not a citizen of Armenia, she is not eligible for asylum. App. 172; *see* INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). However, the IJ granted her applications for withholding of removal and protection under the CAT after finding her testimony regarding Armenia to be credible. App. 180-82. The IJ found she established past persecution because she had been tortured by public officials in Armenia. App. 182-83.

With respect to Georgia, the IJ denied Kudgoian's applications for asylum, withholding of removal, and protection under the CAT. The IJ found that Kudgoian's

3

asylum application, testimony, and documentary evidence were consistent as to the murder of her husband in Georgia, apparently accepting this testimony as credible. App. 174. There was no evidence, however, that Kudgoian, herself, had been threatened or harmed while in Georgia or that she would likely be persecuted if she were to return there. The IJ found that the reports about country conditions in Georgia did not reflect evidence of large scale persecution of Armenians in Georgia or evidence that Georgia tolerates a pattern or practice of persecution of Armenians. App. 174-75. The IJ thus rejected Kudgoian's claim of a well-founded fear of persecution on account of political opinion, and also denied her application for withholding of removal. App. 179. The IJ also denied her application for protection under the CAT for failure to show that she would be tortured if returned to Georgia.

In her appeal to the BIA, Kudgoian included new evidence, not previously submitted to the IJ, including six letters from Armenians who fled Georgia, two statements from individuals living in Georgia, three news articles, two expert opinions from political scientists regarding the persecution of Armenians in Georgia, and documentation from an American psychiatrist showing that Kudgoian suffers from posttraumatic stress disorder. She faults the BIA for not considering this evidence. The BIA, in a very brief opinion, summarily affirmed the IJ's decision, noting that Kudgoian had "presented no arguments on appeal which persuade us that this decision should be disturbed." App. 2. The BIA did not specifically mention the newly submitted evidence.

4

The BIA had jurisdiction to review the decision of the immigration judge pursuant to 8 C.F.R. § 1003.1(b)(3) and § 1240.15.  We have jurisdiction to review the decision of the BIA pursuant to 8 U.S.C. § 1252(a)

III.

While we agree with the IJ that the evidence Kudgoian presented to the IJ clearly was lacking proof as to her likely persecution, the evidence newly submitted in the appeal to the BIA just as clearly supports the prospect of persecution of Armenians in Georgia. The BIA's decision gives no indication that the Board was even aware of the new submissions.  This may be because the BIA chose to disregard the evidence because no motion for remand had been filed, or because it did not find the evidence persuasive.  We simply do not know.  By failing to comment on Kudgoian's new evidentiary submissions, the BIA's opinion frustrates our ability to review its decision on the merits. *See Cruz v. Attorney General*, 2006 WL 1687393, *6 (3d Cir. 2006).

We believe it would not be unreasonable for the BIA to treat the submission of new evidence as a *de facto* request for a remand under 8 C.F.R. § 1003.1(d)(3)(iv). However, rather than decide this issue ourselves in the first instance, we will remand so the BIA can consider the question of whether Kudgoian's direct submissions to the BIA should be treated by the BIA as a motion for remand pursuant to 8 C.F.R. § 1003.1(d)(3)(iv).  *See INS v. Ventura*, 537 U.S. 12, 16-17 (2002) (courts of appeals should remand a case to an agency for decision of a matter placed primarily in agency

5

hands). Remand will permit the agency to "bring its expertise to bear upon the matter; it can evaluate the evidence; it can make an initial determination; and, in doing so, it can, through informed discussion and analysis, help a court later determine whether its decision exceeds the leeway that the law provides." *Ventura*, 537 U.S. at 17.

Remand is also consistent with our decision in *Konan v. Attorney General*, 432 F.3d 497 (3d Cir. 2005). In *Konan*, we concluded that, because the BIA had not explained its rationale for denying Konan's claim that he was persecuted due to membership in a particular social group, there was, as of then, "nothing for us to review." 432 F.3d at 498. We held that "[b]asic principles of administrative law thus require that we remand the case for the BIA" to consider Konan's claim "in the first instance." *Id.* Similarly, here, because the BIA ignored Kudgoian's new submissions, we will remand for the BIA to consider in the first instance Kudgoian's claim that they should be considered. *See id.* at 501 ("[A] reviewing court is powerless to decide in the first instance issues that an agency does not reach."). *Cf. Vente v. Gonzales*, 415 F.3d 296, 302 (3d Cir. 2005) ("When deficiencies in the BIA's decision make it impossible for us to meaningfully review its decision, we must vacate that decision and remand so that the BIA can further explain its reasoning.") (internal quotation omitted).

Accordingly, we will give the BIA the opportunity to clarify its opinion and address whether the new evidence submitted by Kudgoian merits a remand to the immigration judge for further development of the record.

## V.

For the reasons set forth, we will grant the petition for review and remand to the BIA for proceedings consistent with this opinion.