**XIU HANG WANG, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 06–3101.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Sept. 25, 2007.

Filed: Oct. 24, 2007.

Eric C. Spero, Philadelphia, PA, for Petitioner.

Richard M. Evans, Susan K. Houser, Patricia A. Smith, United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: AMBRO, JORDAN and ROTH, Circuit Judges.

## OPINION OF THE COURT

JORDAN, Circuit Judge.

Xiu Hang Wang has petitioned this Court for review of the decision of the Board of Immigration Appeals ("BIA") summarily affirming the decision of the Immigration Judge ("IJ") denying his petition for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Wang alleges that his testimony was credible and sufficient to meet the requisite burdens of proof. For the reasons discussed below, we will deny Wang's petition.

### I.

Wang is a nineteen year old male and a Chinese citizen. His parents are Catholic and he was baptized into the Catholic Church on April 6, 1997. According to information provided by Wang, the church he attended in China is loyal to the Vatican, not the Chinese Catholic church approved by the government. Wang said that on July 13, 2002, local officials, some of whom were armed, arrived at his church building to tear it down. He claimed a crowd of between seventy and ninety people gathered, including some members of the church. He further claimed that fif-

teen officials with a bulldozer were also present, and that one of the officials was holding Wang's father down on the ground and twisting his arm behind his back. Wang said he threw a brick at the official restraining his father, knocking the official to the ground. The fallen official screamed to the others, and at least three officials approached Wang, telling him to stay where he was. Wang claimed that somehow his father grabbed him and the two of them were able to escape to the home of Wang's aunt. Wang said that he later learned from his mother that although other people at the scene had been arrested, none were juveniles who had not fought with the police. Wang's mother also allegedly told him that officials had come to his house to arrest him and his father, and that she had been detained by the police for about two hours. Later, Wang's father was able to arrange for Wang's travel to the United States. Wang arrived in the United States on September 6, 2002, and was served with a notice to appear by the Immigration and Naturalization Service ("INS") on September 11, 2002. In May 2003, Wang admitted he was removable and applied for asylum, withholding from removal, and protection under the CAT. The application was prepared by an attorney and included a statement written by Wang setting forth the foregoing facts. Wang's application listed his religion as "Catholic" and he applied for relief on the basis of religious persecution.

On December 9, 2004, Wang appeared at a removal hearing held before the IJ. At his hearing, Wang testified to additional details not included in his application for relief. He testified that officers had come by his house ten additional times looking for him and his father and that they had a warrant for his arrest. He also said that his father was now living in another part of China and returned home secretly every few months. Although Wang testified that

he speaks with his family approximately every ten days by phone, he did not provide any independent corroboration of any of these new details or the information contained in his initial application. His only corroborating evidence was a letter from his cousin, Ms. Chen Hui, a legal U.S. resident with whom he had been living since he arrived in the United States. Although Wang said Ms. Hui was aware of the circumstances surrounding his flight from China, her letter only confirmed their familial relationship and she did not testify as a witness. When he was asked why he had not included the new information in his initial application, he said that the application was just a "summary" of what had happened to him. (Appendix at 14.) When asked why he had not produced any statements or other corroborating evidence from his family, Wang said that his mother was sick and did not know how to write, and although his two sisters knew how to write, he did not want to worry them by letting them know he was having immigration difficulties in the United Sates. He claimed his cousin, Ms. Hui, was "too busy" to testify. (*Id.* at 16.) He also acknowledged that if he had not thrown the brick it "would not have been bad for him" and that people of similar age at the church that day who were not fighting were not arrested. (*Id.* at 14.)

The IJ issued an oral opinion denying relief. The IJ found Wang was not credible because he had included details in his statement at his removal hearing which were not included in his initial application for relief. The IJ found Wang's description of his escape from fifteen officials, some of whom were armed, "miraculous." (*Id.* at 18–19.) The IJ also found that Wang had not met his burden of proof because, given his communication with his immediate family and his claim that his cousin was aware of the events in China, it would have been reasonable for him to

submit some independent corroboration of his claims. Finally, the IJ ruled that, even if Wang's testimony were entirely credible, he failed to establish either past persecution or a well-founded fear of future persecution because any hardship he suffered was caused by his assault on the official, not his religion per se. The IJ also denied Wang's claim under the CAT because he concluded that, although Wang might be detained when he returned to China, he had not established that it was more likely than not he would be tortured by the Chinese government. The BIA summarily affirmed the IJ's decision on May 18, 2006, and Wang appealed to this Court on June 13, 2006.

## II.

We have jurisdiction over a petition for review from the BIA's order of removal under section 242(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1252(a)(1). *Lie v. Ashcroft,* 396 F.3d 530, 534 n. 3 (3d Cir.2005).

When the BIA "directs us to the opinion and decision of the IJ who originally assessed [the] application, we review the IJ's decision." *Dia v. Ashcroft,* 353 F.3d 228, 240 (3d Cir.2003). We review factual findings to determine if they are supported by substantial evidence. "The administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *I.N.S. v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). The BIA's ultimate decision as to whether an applicant has demonstrated past persecution or a well-founded fear of future persecution is also reviewed under this same deferential standard. *Id.* We review questions of law de novo. *Wang v. Ashcroft,* 368 F.3d 347, 349 (3d Cir.2004).

## III.

Wang argues that he is entitled to asylum and withholding of removal, and he also contests the BIA's credibility findings. To qualify for asylum, a petitioner must show that he is "unable or unwilling to return to ... his country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1158(b)(1)(B)(i), 1101(a)(42). To qualify for withholding of removal, an applicant must show, by a clear probability, the existence of a threat to life or freedom "because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3); *I.N.S. v. Stevic,* 467 U.S. 407, 430, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984); *Janusiak v. I.N.S.,* 947 F.2d 46, 47 (3d Cir.1991). The "clear probability" standard is more stringent than the "well-founded fear" standard, and thus an applicant who fails to demonstrate a well-founded fear with respect to an asylum application will be unable to demonstrate a clear probability with respect to withholding of removal. *Janusiak,* 947 F.2d at 47.

We have explained that "persecution connotes extreme behavior...." *Ahmed v. Ashcroft,* 341 F.3d 214, 217 (3d Cir.2003) (citing *Fatin v. INS,* 12 F.3d 1233, 1238 (3d Cir.1993)). It "does not include all treatment that our society regards as unfair, unjust, or even unconstitutional." *Id.*

■ First, we conclude that the IJ's adverse credibility determination is supported by substantial evidence. While it may well have been possible, given the size of the crowd and the chaotic nature of the events, for Wang and his father to have escaped as he described, we must uphold the IJ's credibility determinations unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8

U.S.C. § 1252(b)(4)(B). Given the somewhat unlikely nature of his escape, his failure to include important details in his application for asylum, and his failure to provide corroborating evidence, we conclude that the IJ's credibility determinations were supported by substantial evidence.

■ Second, we also agree that Wang failed to meet his burden of proof. As required by our decision in *Abdulai v. Ashcroft*, 239 F.3d 542, 554–55 (3d Cir. 2001), the IJ carefully identified the facts for which it would have been reasonable to expect Wang to provide some corroboration, examined whether he had done so, and analyzed whether his explanations for failing to provide corroboration were adequate. Wang's testimony showed that, after coming to the United Sates, he communicated frequently with family members in China who were present during the events in question. He also claimed his cousin in the United States was aware of the circumstances under which he had left China. Nevertheless, he did not provide any evidence from these individuals supporting his story. A negative inference was fairly drawn under these circumstances. Given our deferential standard of review, we must therefore conclude that the IJ's determination that Wang had not met his burden of proof is supported by substantial evidence.

■ Because we conclude that the credibility and burden of proof findings were supported by substantial evidence, Wang has not met the "well-founded fear of persecution" standard for asylum. Therefore he has also not met the higher "clear probability" standard for withholding of removal.[1] *Janusiak v. I.N.S.*, 947 F.2d 46,

47 (3d Cir.1991). Accordingly, we will deny the petition for review.

---

1. We will not exercise jurisdiction over Wang's claims for protection under the CAT because he "makes no specific argument that the BIA's denial of [his] claims for … CAT protection were incorrect. We therefore deem those claims waived." *Vente v. Gonzales*, 415 F.3d 296, 299 n. 3 (3d Cir.2005) (citing *Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)).