

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-13-2008

# Cao v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2968

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Cao v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1232.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1232

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEAL
FOR THE THIRD CIRCUIT

No. 06-2968

JIAPENG CAO; JI FEN HUANG;
CARRIE CAO,

Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

On Petition for Review from an Order of the
Board of Immigration Appeals
(INS-1: A98-166-705;
INS-1: A98-166-706;
INS-1: A98-166-707)
Immigration Judge: Hon. R. K. Malloy

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 9, 2008

BEFORE:  SMITH, HARDIMAN and COWEN, Circuit Judges

(Filed: May 13, 2008)

OPINION

COWEN, Circuit Judge.

Petitioner, Jiapeng Cao ("Cao"), asks this Court to review the BIA's finding that

he (along with his wife and daughter who are included on his asylum application), failed to meet his burden of showing past persecution in China as well as the finding that he failed to demonstrate a well-founded fear of future persecution if he is returned to China. For the following reasons, we will deny the petition for review.

I.

In 1989, Cao began attending an underground Christian church while in China. In April 1994, Cao was at a church gathering at a house when police officers arrived. The officers arrested Cao. Cao was then required to report to a detention center every day for three months for several hours. During these sessions at the detention center, Cao was forced to write confessions with respect to his religious beliefs. He was allowed to go home after these sessions each day. Cao asserted that the purpose of these sessions was an attempt to brainwash him with respect to his religion. After three months, Cao was released from the requirement of attending these sessions. Subsequently, Cao found it difficult to find a job in China.

In 1995, Cao moved to Trinidad & Tobago. Cao had some family members living in Trinidad & Tobago. Subsequently, Ji Fen Huang arrived in Trinidad & Tobago in 1997. Cao knew Huang in China because they attended the same church. While in Trinidad & Tobago, Cao married Huang. In April 1998, they had a daughter, Carrie Cao. Carrie Cao is a citizen of Trinidad & Tobago. All three were baptized in Trinidad & Tobago.

Cao worked in, and eventually owned a restaurant in Trinidad & Tobago. He

2

continued to attend a Christian church while in Trinidad & Tobago. Cao asserted that he was under surveillance by Chinese authorities in Trinidad & Tobago due to his Christian faith. Specifically, he alleged that Chinese embassy officials would take photos of church celebrations and display them at the embassy. Cao also asserted that he was robbed several times. Cao alleged that his family was on a Chinese "watch list." He argued that he would be persecuted if his family returned to China. Nevertheless, Cao's wife and daughter returned to China at one point to visit his wife's mother. They remained in China for twenty days. Additionally, Cao went to the Chinese embassy in Trinidad & Tobago to renew his passport.

Cao arrived in the United States in 2003. After overstaying his visa, he filed an application for asylum, withholding of removal and for relief under the Convention Against Torture ("CAT") based on his religion.

The IJ did not make an explicit adverse credibility determination at the removal hearing. Rather, the IJ criticized Cao for failing to have his sister, who lived in New Jersey, appear at the hearing and corroborate his allegations. Next, the IJ noted that Cao was allowed to go home everyday during the three-month period he was required to go the detention center, and that he was not physically harmed by the authorities. The IJ also stated that Cao was not required to attend these sessions after the three-month period ended. Furthermore, the IJ explained that Cao's testimony with respect to Chinese officials spying on him while in Trinidad & Tobago was only first raised at the removal hearing. Additionally, the IJ noted that Cao went to the Chinese embassy without

3

incident, and that his wife returned to China to visit her mother also without incident.

Based on these circumstances, the IJ determined that Cao failed to show past persecution and failed to establish that he would suffer future persecution if he returned to China. The IJ ordered Cao and his wife returned to China, and their daughter returned to Trinidad & Tobago.

On appeal to the Board of Immigration Appeals ("BIA"), the BIA stated that Cao failed to demonstrate past persecution in China. Furthermore, the BIA determined that Cao failed to demonstrate a well-founded fear of future persecution on account of his Christian faith if he was returned to China. The BIA specifically noted the fact that his wife and daughter had returned to China without any problems, and that Cao had renewed his passport while in Trinidad & Tobago at the Chinese embassy also without incident. The BIA ordered all of the respondents removed to Trinidad & Tobago. Cao timely filed a petition for review.

## II.

We have jurisdiction to review a final order of removal pursuant to 8 U.S.C. § 1252. Where the BIA adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the decisions of both the BIA and the IJ. See Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). Whether the applicant has met his burden of establishing eligibility for asylum is a factual determination reviewed under the substantial evidence standard. See Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). If substantial evidence supports the decision below, we will affirm "unless any reasonable

4

adjudicator would be compelled to conclude to the contrary" under the circumstances. 8 U.S.C. § 1252(b)(4)(B).

III.

An applicant for asylum has the burden of establishing that he is unable or unwilling to return to his home country because of past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. See 8 U.S.C. § 1101(a)(42)(A). To establish asylum eligibility based on past persecution, an alien must show that he suffered harm rising to the level of persecution on account of a statutorily protected ground, and that it was committed by government forces or forces the government is unwilling to control. See Gao, 299 F.3d at 272. Nevertheless, if the alien cannot show past persecution, he may still establish a well-founded fear of future persecution by showing a subjective fear of persecution, and that a reasonable person in the alien's circumstances would fear persecution if returned to the country in question. See Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003). Persecution is defined as "extreme conduct," such as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Fatin v. I.N.S., 12 F.3d 1233, 1240 (3d Cir. 1993). It "does not include all treatment that our society regards as unfair, unjust or even unlawful or unconstitutional." Ahmed v. Ashcroft, 341 F.3d 214, 217 (3d Cir. 2003) (internal quotation marks and citation omitted).

In this case, the IJ did not err in concluding that Cao had not suffered past

5

persecution as we have defined that term for these purposes. See Fatin, 12 F.3d at 1240.

Substantial evidence supports the findings that the incidents described by Cao did not rise to the level of past persecution, and we are not compelled to conclude to the contrary. Cao makes several arguments in an attempt to show that the IJ and BIA erred with respect to deciding his past persecution claim. First, Cao asserts that the IJ erred by stating that without physical harm, Cao was not entitled to asylum. We disagree with Cao's assessment of the IJ's decision. We have previously noted that physical persecution is no longer a required element to establish persecution. See Li v. Att'y Gen. of United States, 400 F.3d 157, 166 (3d Cir. 2005). Nevertheless, in this case, the IJ did not deny Cao's claim of past persecution based solely on his failure to show physical persecution. Rather, the IJ examined the totality of Cao's circumstances. The lack of physical persecution was but one factor considered by the IJ. Second, Cao asserts that the IJ erred in relying on the fact that Cao was not formally baptized until he arrived in Trinidad & Tobago, thereby diminishing his asylum claim. However, as previously stated, the IJ did not make an adverse credibility determination with respect to Cao's religious beliefs. Instead, the IJ determined that the incidents described by Cao did not rise to the level of past persecution.

Substantial evidence in the record also supports the finding that Cao failed to show a well-founded fear of future persecution if returned to China. Indeed, Cao asserted that he and his wife were on a Chinese "watch list," yet his wife and daughter returned to China and remained there for twenty days without incident. Cao asserts that the BIA

6

erred in relying on this evidence because his fear of persecution based on his religion is tied to his biological family, as opposed to his marital family. Cao principally relies on Vente v. Gonzales, 415 F.3d 296 (3d Cir. 2005), to support his position. Cao's reliance on Vente is misplaced under these circumstances. In Vente, we stated that the BIA's reliance on the fact that Vente's family members remained in Columbia and that they have not suffered any harm was misplaced. See id. at 302. We noted that the petitioner did not claim persecution on account of kinship ties, nor a fear of persecution on account of his membership in a particular social group or that his family members were ever targeted in the same way he was. See id. To the contrary, with respect to Cao's claim of persecution, it is based on his Christian faith. Cao's wife is Christian. Cao even admitted during the removal hearing that his wife attended the same underground church while they both lived in China. Additionally, Cao stated that he believed his wife was on the same Chinese "watch list" as he was. Therefore, the BIA's reliance on his wife returning to China without incident was plainly appropriate under these circumstances. Furthermore, as noted by the BIA, Cao went to the Chinese embassy in Trinidad & Tobago to update his passport also without incident. This undercuts Cao's theory that he would be persecuted if he returned to China. The BIA's decision with respect to Cao's claim of future persecution was based on substantial evidence, and we are not compelled to conclude to the contrary.[1]

---

[1] Because Cao failed to satisfy the standard for asylum, he necessarily fails to meet the standard for withholding of removal. See Lukwago v. Ashcroft, 329 F.3d 157, 182 (3d

## III.

For the foregoing reasons, the petition for review is denied.[2]

---

Cir. 2003). Cao's claim for protection under the CAT is also rejected. An applicant is entitled to withholding of removal under the CAT if he shows that it is more likely than not that he will be tortured if removed to the proposed country. See 8 C.F.R. § 1208.16(c)(2). Based on this record, the decision to deny Cao CAT relief was based on substantial evidence, and we are not compelled to conclude to the contrary.

[2] To the extent that Cao's claim of persecution in Trinidad & Tobago remains an issue, the denial of this claim was based on substantial evidence. See, e.g. Fatin, 12 F.3d at 1240 (noting that persecution is an extreme concept that does not encompass all treatment that is regarded as unfair, unjust or even unlawful or unconstitutional). Additionally, we note that Cao has withdrawn his claim that the BIA erred in designating Trinidad & Tobago as the country of removal for all of the Petitioners.