**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-1592
_____

BESIKI KUPRAVISHVILI,
                                                            Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
_____Respondent

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A094-778-721)
Immigration Judge: Henry S. Dogin
_____

Submitted Under Third Circuit LAR 34.1(a)
April 14, 2010
Before: MCKEE, Chief Judge, HARDIMAN and COWEN, Circuit Judges

(Opinion filed: July 27, 2010)

_____

OPINION
_____

PER CURIAM

    Besiki Kupravishvili seeks review of a final order of removal.  For the reasons that

follow, we will deny the petition for review.

I.

Petitioner Besiki Kupravishvili, a native of Georgia and a citizen of Uzbekistan,

entered the United States in 2005 as a non-immigrant visitor.  He failed to depart, and in

2006, the Department of Homeland Security ("DHS") commenced removal proceedings.

Kupravishvili applied for asylum, withholding of removal, and CAT protection, and

voluntary departure as an alternative to removal.

Kupravishvili testified that he was persecuted in Uzbekistan on account of his

political activities.[1]  He stated that he joined the International Association for Democratic

Reforms and Rights for National Minorities of Uzbekistan[2] in 2003.  The organization is

underground in Uzbekistan and is headquartered in Brussels, Belgium.  He stated that his

duties included sending packets of information to the Brussels office monthly.  On May

13, 2005, Kupravishvili traveled from his home in Tashkent to Andijan to attend a large

public gathering.  The military responded to the demonstration and fired on the crowd,

killing hundreds.  The next day, Kupravishvili gave a statement to a German radio

correspondent, which reported his name during its first broadcast.  Kupravishvili hid, but

was found and detained.  He then returned to Tashkent and was arrested in his home on

---

[1] As the BIA noted, although Kupravishvili also mentions his Georgian nationality as a cause for persecution in Uzbekistan, he did not offer any evidence that he was persecuted on this ground.  His evidence focuses entirely on his political activities.  As such, we decline to address his nationality as a basis for asylum.

[2] Kupravishvili also refers to the organization as the International Association for Democratic Reforms and Protection of Minorities in Uzbekistan.

May 26, 2005. Agents of the former KGB, the NSG, beat him and interrogated him.

Kupravishvili testified that NSG agents arrested him a second time on May 30, 2005. They interrogated him and beat him before releasing him on June 3, 2005, after which he was hospitalized for four days as a result of his injuries. While he was in the hospital, NSG agents searched his home and found evidence that he had sent documents to Brussels. He was arrested again on June 9, 2005, and was interrogated and beaten. The agents pressured him to sign a paper stating that he was a traitor to Uzbekistan. He refused until they brought his wife, who was handcuffed and injured, before him.

Kupravishvili stated that his injuries were so severe that he repeatedly lost consciousness and believed he was dying. He claimed the agents "tossed" him into the street once they realized the severity of his injuries. Strangers found him and called an ambulance; he was taken to the hospital where he stayed for three days. He left because he feared that the agents would find him again. He fled Uzbekistan and traveled through Azerbaijan to Georgia, before finally coming to the United States on a visa he had procured in 2004. In the meantime, his wife and teenage son were also detained and assaulted; his son was hospitalized for his injuries. He testified that his wife remains under surveillance.

The Immigration Judge ("IJ") did not make an express credibility finding, but stated that he believed part of Kupravishvili's testimony and questioned other parts. The IJ acknowledged that according to the State Department's country report, Uzbekistan is

3

an authoritarian state, noted that its human rights record is poor, and expressed sympathy for the people of Uzbekistan. The IJ recognized Kupravishvili's evidence of his hospitalizations, but noted that there was nothing to connect his injuries to any government actor or to any political action on his part. The IJ found discrepancies between his testimony and his wife's statement and his son's medical records, and questioned how he managed to leave the country after signing a paper stating that he was a traitor. The IJ concluded that Kupravishvili failed to establish past persecution or well-founded fear of persecution based on his political activities. The IJ denied asylum, withholding of removal, and CAT relief, and granted his application for voluntary departure. The Board of Immigration Appeals ("BIA") dismissed his appeal. Kupravishvili filed a timely petition for review.

## II.

We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252(a)(1). See Abdulai v. Ashcroft, 239 F.3d 542, 547 (3d Cir. 2001). "Because the [BIA] implicitly adopted the findings of the Immigration Judge while discussing the IJ's conclusions, we review the decisions of both the [BIA] and the IJ." Issiaka v. Att'y Gen., 569 F.3d 135, 137 (3d Cir. 2009). We review factual findings for substantial evidence, see Briseno-Flores v. Att'y Gen., 492 F.3d 226, 228 (3d Cir. 2007), upholding them "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); see also Dia v. Ashcroft, 353 F.3d 228, 249 (3d Cir. 2003) (en

4

banc).

III.

To establish eligibility for asylum, Kupravishvili must demonstrate either past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. See Vente v. Gonzales, 415 F.3d 296, 300 (3d Cir. 2005). For withholding of removal, he must demonstrate that it is more likely than not that his life would be threatened in Uzbekistan on account of one of these protected grounds. Tarrawally v. Ashcroft, 338 F.3d 180, 186 (3d Cir. 2003); 8 U.S.C. § 1231(b)(3)(A). To be eligible under the Convention Against Torture, Kupravishvili must demonstrate that it is more likely than not that he would be tortured if removed to Uzbekistan. 8 C.F.R. § 208.16(c)(2).

Kupravishvili claims that because the IJ and the BIA found petitioner's evidence and testimony credible, the finding that he failed to meet his burden of proof was arbitrary and capricious. He asserts that he established past persecution and argues that the IJ's findings were contrary to the weight of the evidence. We find substantial evidence supports the IJ's and BIA's conclusions that Kupravishvili has failed to adequately substantiate his claim that he was persecuted on account of his political activity.

The testimony of an asylum-seeker, "if credible, may be sufficient to sustain the burden of proof without corroboration." Mulanga v. Ashcroft, 349 F.3d 123, 133 (3d Cir. 2003). However, we have found that "an applicant for asylum must provide reliable

5

evidence to corroborate testimony when it is reasonable [to do so] and there is no satisfactory explanation for its absence." Sandie v. Att'y Gen., 562 F.3d 246, 252 (3d Cir. 2009). Accordingly, denial of relief may be predicated on a failure to corroborate when: "(1) the IJ identifies facts for which it is reasonable to expect the applicant to produce corroboration, (2) the applicant fails to corroborate, and (3) the applicant fails to adequately explain the failure." Chukwu v. Att'y Gen., 484 F.3d 185, 191-92 (3d Cir. 2007) (citing Abdulai, 239 F.3d at 554).

Here, the IJ and the BIA engaged in the inquiry required by Chukwu. The IJ determined that Kupravishvili should have presented items such as: (1) documents to establish the existence of the organization to which he claimed to belong, including news articles referring to the group and information from the headquarters in Brussels, (2) documents from members of the organization to confirm his membership, and (3) information from the German radio station that he claimed broadcasted a story naming him as a participant in the May 2005 demonstration.

Based on the circumstances of this case, we agree with the BIA that it was reasonable to expect Kupravishvili to submit evidence of the organization's existence and his membership in it. Kupravishvili testified that he could not obtain documents from Uzbekistan because the organization was underground, that he had made no effort to obtain documents from the headquarters in Brussels, and that language barriers prevented him from contacting the German radio station. Although the IJ correctly determined that

6

a line of communication was open between Kupravishvili and individuals in Uzbekistan, his claim that it would be dangerous to contact members of the group in Uzbekistan is not unreasonable. However, he failed to present anything to prove the existence of the group whatsoever. We agree with the BIA that it is reasonable to expect that he could have obtained some information from the headquarters in Brussels, an office with which he had monthly contact. However, we also agree with the BIA that, while it seems that obtaining information from the German radio station would be possible, Kupravishvili's claim that language barriers prevented him from doing so is plausible. Given these facts, the BIA's conclusion that Kupravishvili failed to corroborate his claim is supported by substantial evidence.

Kupravishvili's related claim that the IJ ignored his evidence regarding the conditions in Uzbekistan is without merit. The IJ acknowledged the poor conditions in the authoritarian state and expressed sympathy for anyone who has to live under such rule. Nevertheless, the IJ properly reasoned that in order to qualify for asylum, Kupravishvili was required to establish that his injuries were on account of his political activities. See Ndayshimiye v. Att'y Gen., 557 F.3d 124, 129 (3d Cir. 2009).

We agree with the IJ and the BIA that Kupravishvili, having failed to satisfy his burden of proof to qualify for asylum, failed to satisfy the even higher burden for withholding of removal. Likewise, the record does not support Kupravishvili's claim for CAT protection. Accordingly, we will deny the petition for review.