**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1845
_____

MARIA ANGELICA GONZALEZ-GARCIA; JUAN JOSE CASTELLANOS-
GONZALEZ,
Petitioners

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review of a
Decision of the Board of Immigration Appeals
(A208-682-047; A208-682-048)
Immigration Judge:  John B. Carle
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on January 29, 2021

Before: JORDAN, MATEY, *Circuit Judges*, and BOLTON,* *District Judge*

(Opinion filed: March 9, 2021)

_____

OPINION**

_____

---

* Honorable Susan R. Bolton, District Judge, United States District Court for the District of Arizona, sitting by designation.
** This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

MATEY, *Circuit Judge*.

Maria Angelica Gonzalez-Garcia ("Gonzalez-Garcia") and her son, Juan Jose Castellanos-Gonzalez ("Juan Jose"), fear persecution if they return to their native home in El Salvador. Because neither satisfies the requirements for asylum or withholding of removal, we will deny their petition for review of the decision of the Board of Immigration Appeals.

## I. BACKGROUND

Gonzalez-Garcia began a relationship with Gabriel Castellanos ("Castellanos") when she was 13, and the two share seven children. The relationship was often abusive so, in 2010 or 2011, after multiple failed attempts to leave, Gonzalez-Garcia went to live with her sister and "never again returned [to Castellanos]." (A.R. at 157–58.) Castellanos tolerated the separation, fearing reprisal from the family of Gonzalez-Garcia's sister, as Castellanos murdered one of their relatives. After a few years with her sister, Gonzalez-Garcia and Juan Jose, one of her sons and a derivative beneficiary of her asylum application, came to the United States. Removal proceedings began and Gonzalez-Garcia and Juan Jose filed I-589 applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").

In 2018, an immigration judge denied their applications and ordered their removal to El Salvador. The IJ repeatedly cited *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018) (abrogated on other grounds by *Grace v. Barr*, 965 F.3d 883 (D.C. Cir. 2020)), a decision

clarifying the standards for showing membership in a "particular social group."[1] On appeal, the BIA adopted and affirmed the IJ's decision, finding Gonzalez-Garcia failed to establish membership in her first proposed particular social group[2] and failed to show a nexus between her persecution and her membership to her second proposed particular social group ("Castellanos/Gonzalez-Garcia" family). (App. at 6.) Gonzalez-Garcia renews both her due process and substantive claims here, but only appeals the denial of her asylum application.

## II. DISCUSSION

The BIA had jurisdiction under 8 C.F.R. § 1003.1(b)(3), and we have jurisdiction under 8 U.S.C. § 1252(a). In reviewing the Board's decision, we consider the facts to "ensure that they are supported by substantial evidence," but "review the BIA's legal conclusions *de novo*." *Huang v. Att'y Gen.*, 620 F.3d 372, 379 (3d Cir. 2010). When the Board adopts an IJ's decision, we consider both opinions. *Shehu v. Att'y Gen.*, 482 F.3d 652, 657 (3d Cir. 2007).

Gonzalez-Garcia argues the IJ's reliance on *Matter of A-B-* violated due process. She also argues the Board erred in failing to find a nexus between her past persecution and

---

[1] Although the Board has responded to the D.C. Circuit in *Matter of A-B-, Respondent*, 28 I. & N. Dec. 199 (BIA 2021), that dialogue does not disturb *Matter of A-B-*'s holding on circularity and therefore does not affect our analysis here.

[2] Defined as "El Salvadoran women in a domestic partnership, who cannot leave the relationship."

3

her membership to the particular social group "immediate family members in the Castellanos/Gonzalez-Garcia" family. We find no error in either conclusion.

## A.    Gonzalez-Garcia Received Due Process

In 2014, the BIA decided that "married women in Guatemala who are unable to leave their relationship" could constitute a particular social group under the Immigration and Nationality Act. *Matter of A-R-C-G-*, 26 I & N. Dec. 388 (BIA 2014). Gonzalez-Garcia relied on this ruling in her asylum application to argue membership in the particular social group of "Salvadoran women who are unable to leave a domestic relationship." (A.R. at 273.) But between her hearing and the IJ's decision, the Attorney General overruled that holding in *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018). The IJ applied *A-B-* to Gonzalez-Garcia's application, and she claims this "deprived [her] of the reasonable opportunity to effectively make arguments." (Opening Br. at 17.)

Even if true, Gonzalez-Garcia cannot show prejudice. In applying *A-B-*, the IJ and the Board found that "Salvadoran women in a domestic partnership who cannot leave the relationship" was too "amorphous" and "circularly defined" to meet the particularity requirement of a "particular social group." (App. at 5–6.) But independent of that determination, both found that Gonzalez-Garcia failed to establish membership in her proposed group. Gonzalez-Garcia, the IJ explained, "was able to leave Gabriel in 2011 when she moved in with her sister." (App. at 5.) That factual finding is supported by substantial evidence in her own testimony. Indeed, Castellanos's own fear kept him away

4

from Gonzalez-Garcia. So *Matter of A-B-* was applied as part of an alternative holding, and either ruling was enough to defeat her claim.

**B.      Gonzalez-Garcia Did Not Show the Salvadoran Government Is Unwilling or Unable to Protect Her**

Substantial evidence supports the IJ's conclusion that Gonzalez-Garcia had not met her burden of showing the government in El Salvador was unable or unwilling to control her husband. Gonzalez-Garcia never sought any sort of governmental protection, and she provided no personal evidence that her government would not help. While she did provide a news article (A.R. at 290–92) and a 2016 report on human rights, (A.R. at 295–329), the weight afforded to supporting evidence is a question for the IJ.

**C.      The IJ and BIA's Handling of the "Relocation" Requirement Was Inconsequential**

An asylum applicant "does not have a well-founded fear of persecution if the applicant could avoid persecution by relocating to another part of the applicant's country of nationality." *Vente v. Gonzales*, 415 F.3d 296, 303 (3d Cir. 2005) (quoting 8 C.F.R. § 1208.13(b)(2)(ii)). So, for an asylum application to be granted, the applicant must be unable to relocate within their home country. Gonzalez-Garcia claims the IJ and the Board improperly placed the burden of whether she could relocate on her, rather than on the government, and ignored whether such relocation would be reasonable. But because she did not establish that she qualified as a refugee, neither the IJ nor the Board needed to determine reasonableness. So there was no error.

5

### III. CONCLUSION

Because Gonzalez-Garcia could not prove substantial prejudice in the Board's decision, there was no violation of due process. And because she did not show the Salvadoran government was unwilling or unable to protect her, the denial of her application for asylum was supported by substantial evidence. Any other error was harmless. For these reasons, we will deny Gonzalez-Garcia's petition for review.