

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-14-2009

# Martadinata v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1012

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Martadinata v. Atty Gen USA" (2009). *2009 Decisions.* Paper 2041.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/2041

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-1012
_____

RAYMOND MARTADINATA,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
Agency No. A79-497-612
Immigration Judge: Donald V. Ferlise

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 17, 2008

MCKEE, NYGAARD and ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed:January 14, 2009)
_____

OPINION
_____

PER CURIAM

    Petitioner Raymond Martadinata, an ethnic Chinese Christian native and citizen of

Indonesia, entered the United States on January 30, 2001 as a nonimmigrant B-2 visitor

with authorization to remain for a temporary period not to exceed July 29, 2001.

Martadinata overstayed his visit, and was served with a Notice To Appear for removal proceedings on June 17, 2002, alleging that he was removable under Immigration and Nationality Act ("INA") § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B). Martadinata retained an accredited representative, Ms. Janet Hinshaw-Thomas, and she sought, and received, a change of venue from Arlington, Virginia to Philadelphia, Pennsylvania.

Martadinata applied for asylum under INA § 208(a), 8 U.S.C. § 1158(a), and withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and the Convention Against Torture, 8 C.F.R. §§ 1208.16(c), 1208.18, claiming that he had been persecuted in the past on account of his ethnicity and asserting his fear that he would be killed by native Muslims if forced to return to Indonesia. In his asylum affidavit, he described discrimination against ethnic Chinese by native Malays, beginning before his birth in 1970, and related the hostility of native Muslims toward him as a child. In July 1998, during the economic crisis in Indonesia, riots broke out and several native Muslims attacked his car when it was stopped at a red light. They punctured his tire with a knife, and when he got out of his car, they beat him severely about the face and stabbed him in the abdomen. He woke up in a hospital, having been rescued by a private citizen, and there he remained for a week recovering from his injuries. After that, he was successfully employed as an Account Director at a small company, but the business was attacked by an angry mob on November 5, 2000. Muslim protesters, calling for a holy war against Christians, stormed his place of work. He was beaten and forced to flee the building.

2

After this, he left Indonesia for the United States.

A Master Calendar hearing was held on November 13, 2003 in Philadelphia, at which Ms. Hinshaw-Thomas appeared. Martadinata was advised to have any additional evidence submitted by April 23, 2005, and a merits hearing was scheduled for May 23, 2005. Prior to the hearing, Ms. Hinshaw-Thomas received a letter from Martadinata indicating that he had moved to Lompoc, California. Accordingly, she filed a motion on April 23, 2005, seeking another change of venue, and also seeking to withdraw as Martadinata's representative on the ground that her small non-profit organization could not bear the burden of the expense of a long distance representation.

The Immigration Judge denied both motions and proceeded with the hearing in Philadelphia on May 23, 2005. Ms. Hinshaw-Thomas was unable to appear, apparently due to illness. The IJ found Martadinata, proceeding without his representative, removable as charged. Martadinata then testified. He is a college graduate with a degree in Economics that he received in 1998 in Indonesia, and he recently worked as a waiter in California. With respect to the incident which occurred in July 1998, he testified that he was attacked by several rioting native Muslims on his way home from work. They attacked him when his car was stopped at a traffic light. They slashed his tire, knocked some of his teeth out, and stabbed him in the stomach. He did not report this incident to the police because he believed they would have been indifferent. Martadinata also testified that he had to bribe Indonesian officials to get identification documents. On

3

cross-examination, he testified that he has five older siblings, all of whom remain in Indonesia. His father died of disease and his mother died as a result of "persecution." His siblings told him that someone threw a rock at her as she was riding her bicycle to the market.

The Department of Homeland Security offered into evidence the 2002 State Department Country Report on Human Rights Practices – Indonesia, and the 2002 International Religious Freedom Report – Indonesia. The former report indicated that ethnic Chinese persons are subjected to discrimination and harassment, and the latter reflected ongoing tensions between Christians and Muslims which frequently erupted into violent conflict. Violence continued in the Moluccas and Sulawesi, though at lower levels than in 2000 and 2001.

In a decision dated May 23, 2005, the IJ denied relief. He explained initially that he had denied the motion to change venue and Ms. Hinshaw-Thomas' motion to withdraw as representative, because there had already been one change of venue, the hearing had already been continued from November 2003, and the motions had been filed at the "eleventh hour."[1] Furthermore, Ms. Hinshaw-Thomas had not personally communicated with the IJ about being ill. Following his review of the testimony, the IJ found that Martadinata was "basically a credible witness." App. 18. However, the events of his childhood and the bribery incidents did not rise to the level of persecution. The one

---

[1] The IJ expressed concern that the venue motion might be a "ploy" to prolong the proceedings.

4

incident of July 1998, although unfortunate, was the result of lawlessness and was not on account of his ethnicity. Even if it was based on his ethnicity, this isolated criminal act by unknown assailants did not provide a basis for asylum.

The IJ further concluded that Martadinata could not show a well-founded fear of persecution. He had no proof that there is a pattern or practice of persecution of ethnic Chinese by the Indonesian government, and he did not show that the Indonesian government was unable or unwilling to control those factions who would harm ethnic Chinese persons. Furthermore, Martadinata's siblings remained in Indonesia and had not experienced problems. With respect to the incident involving his mother, Martadinata had failed to offer evidence as to who threw the rock, whether it was intentional, and whether it was thrown by a native Muslim because his mother was ethnic Chinese. Martadinata was ordered removed to Indonesia.

Martadinata, with the assistance of Ms. Henshaw-Thomas, appealed to the Board of Immigration Appeals. A brief was filed, in which he contended that the IJ erred in going forward with the hearing in the absence of his representative. Moreover, the IJ inappropriately judged the venue motion to be frivolous, and abused his discretion in reviewing and assessing Martadinata's evidence of past and future persecution. In a decision dated December 5, 2006, the Board adopted and affirmed the IJ's decision, see Matter of Burbano, 20 I. & N. Dec. 872 (BIA 1994), with these additions. The Board found no abuse of discretion with respect to the IJ's denial of the request to change venue

5

to California. Martadinata was previously granted a change of venue from Virginia to Philadelphia, and he provided no reason why he needed to move to California (he had since returned to Philadelphia), and he presented the request only one month before the scheduled hearing. The IJ's concern about an unnecessary delay in the proceedings was legitimate.[2]

With respect to his having had to proceed without Ms. Hinshaw-Thomas, the Board noted that she failed to submit evidence to excuse her failure to appear, and Martadinata had not obtained different representation, nor had he alleged ineffective assistance of counsel (or, in this case, ineffective assistance of the accredited representative). In addition, Martadinata could not show that he was prejudiced by the absence of Ms. Hinshaw-Thomas' representation. His cumulative experiences, including the one violent incident in July 1998, did not amount to past persecution, and he had insufficient persuasive evidence of a well-founded fear of future persecution. There was no evidence that his family members had been targeted since his departure to the United States. Although there was evidence of harassment and discrimination in Indonesia, there was no evidence of an actual pattern or practice of persecution of ethnically Chinese Indonesian citizens. See Lie v. Ashcroft, 396 F.3d 530, 537-38 & n.4 (3d Cir. 2005). In addition, although the country conditions evidence described a bleak situation for ethnic Chinese in some parts of Indonesia, other parts of Indonesia had not experienced the same

---

[2] The Board did not, however, endorse the IJ's suspicion of a "ploy."

6

difficulties, and there were countervailing trends toward moderation.

Martadinata obtained new counsel and has timely petitioned for review of the Board's December 5, 2006 decision.[3]  In the instant petition for review, Martadinata contends that the Board erred in denying his request to change venue, in requiring him to proceed without his accredited representative, and in determining that he is not eligible for asylum or statutory withholding of removal.

We will deny the petition for review.  We have jurisdiction to review final orders of removal pursuant to 8 U.S.C. § 1252(a)(1).  In order to establish a due process violation, an alien is required to show prejudice.  See Jarbough v. U.S. Attorney Gen., 483 F.3d 184, 192 (3d Cir. 2007) (citing Cabrera-Perez v. Gonzales, 456 F.3d 109, 115 (3d Cir. 2006)); Singh v. Gonzales, 432 F.3d 533, 541 (3d Cir. 2006) (to prevail on due process claim alien must show "substantial prejudice").  We agree with the Board that the IJ's denial of Martadinata's second motion to change venue did not deprive him of a full and fair hearing or in any way constitute a violation of his right to due process. Martadinata had already received one change of venue, the IJ's concern about an unwarranted further delay in the proceedings was legitimate, and even now he does not explain how a hearing in California would have provided any additional benefits to him.

Although it is a closer question, we also agree with the Board that the IJ did not err

_____

[3] New counsel also filed a motion to reopen with the Board, which the Board denied on July 2, 2007, and a motion to reissue the July 2, 2007 decision, which the Board denied.  The denial of the motion to reissue resulted in a second timely petition for review (No. 08-1575), which we have addressed in a separate opinion.

in deciding to proceed with the May, 23, 2005 hearing in Ms. Henshaw-Thomas' absence. An alien's right to counsel at his removal hearing is based on the Fifth Amendment's guarantee of due process. See Ponce-Leiva v. Ashcroft, 331 F.3d 369, 374 (3d Cir. 2003). However, we agree with the Board that Ms. Henshaw-Thomas' absence did not have the potential for affecting the outcome of these removal proceedings due to the insufficiency of Martadinata's evidence of past and future persecution. Martadinata has pointed to no evidence, witness or argument which would have changed the result of these proceedings, and it is plain from the record that the IJ took all of Martadinata's evidence into consideration, and applied the law correctly to deny asylum and withholding of removal. Martadinata was not prejudiced by Ms. Henshaw-Thomas' failure to appear.[4]

Under INA § 208(b), the Attorney General has the discretion to grant asylum to "refugees." 8 U.S.C. § 1158(b); see also Immigration & Naturalization Serv. v. Cardoza-Fonseca, 480 U.S. 421, 428 n.5 (1987). Section 101(a)(42)(A) of the INA defines a "refugee" as a person unable to return to her country of "nationality . . . because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . ." 8 U.S.C. §

---

[4] We disagree with Martadinata that the IJ's demeanor and conduct had a negative effect on the proceedings in his case. See generally Cham v. U.S. Attorney Gen., 445 F.3d 683, 694 (3d Cir. 2006). We note that the IJ found Martadinata credible in spite of the fact that his asylum application was prepared by an individual indicted for immigration fraud, and, except for questioning whether the second venue motion was a "ploy" to delay proceedings, the IJ was respectful.

8

1101(a)(42)(A).  The alien bears the burden of proof of establishing that he is a refugee and that he has suffered past persecution or has a well-founded fear of persecution.  See 8 C.F.R. § 1208.13(a); Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002).  If past persecution is established, then the asylum applicant is presumed to have a well-founded fear of persecution.  See 8 C.F.R. § 1208.13(b)(1); Shardar v. U.S. Attorney Gen., 503 F.3d 308, 312 (3d Cir. 2007).  If the alien cannot show past persecution, he may still establish a well-founded fear of future persecution by demonstrating a subjective fear of persecution, and that a reasonable person in the alien's circumstances would fear persecution if returned to the country in question.  Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003).

To establish entitlement to withholding of removal under section 241(b)(3) of the INA, 8 U.S.C. § 1231(b)(3), the alien must demonstrate a "clear probability" of persecution through the presentation of evidence that it is more likely than not that he would be subject to persecution if deported.  See Mulanga v. Ashcroft, 349 F.3d 123, 132 (3d Cir. 2003).  This is a more demanding standard than the standard for asylum, and, therefore, an alien who fails to establish his eligibility for asylum "necessarily fails to meet the standard of withholding of removal under INA § 241(b)(3)."  Lukwago v. Ashcroft, 329 F.3d 157, 182 (3d Cir. 2003).

The agency's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B).  See also

9

Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Under this deferential standard, the petitioner must establish that the evidence does not just support a contrary conclusion but compels it. See Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002).

Martadinata has failed to show that the IJ's conclusion that he failed to demonstrate past persecution is not supported by reasonable, substantial and probative evidence on the record considered as a whole. Elias-Zacarias, 502 U.S. at 481.[5] He did not establish that the incidents on which his application was based were the type of harm recognized as constituting persecution. See Fatin v. Immigration & Naturalization Serv., 12 F.3d 1233, 1240 (3d Cir. 1993) (defining persecution as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom"). The 1998 assault was an isolated incident of criminal activity, and, following it, Martadinata remained in Indonesia and was successfully employed for a period of time. He did not allege a serious injury as a result of the November 2000 mob violence and plundering of his place of work. Moreover, the discrimination and harassment he experienced while a child in grade school, and the alleged extortion by corrupt government officials, does not constitute persecution. See Jarbough, 483 F.3d at 191 (citing Fatin, 12 F.3d at 1243). Even taken collectively, the events he related do not add

_____

[5] Where the Board adopted the IJ's reasoning explicitly or implicitly in disposing of the contentions on appeal, we review the IJ's opinion, see Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004).

10

up to persecution; Martadinata's experiences are not similar in degree and kind to those of the alien in Matter of O-Z- & I-Z-, 22 I. & N. Dec. 23 (BIA 1998).

Martadinata's evidence of a well-founded fear of persecution also falls short. He did not present evidence that he might be singled out for persecution, and, although he contests the Board's finding that his mother and siblings continue to live in Indonesia without experiencing problems, noting that the IJ ignored the impact of his mother's death, this argument is not persuasive. Martadinata himself testified that he knew very little of the circumstances surrounding his mother's death. The burden of proof is upon the alien to prove his case, see Gao, 299 F.3d at 272, and thus the IJ was not required to assume that she was killed for persecutory reasons. Moreover, the experiences of his siblings undercut his contentions, because there is no evidence that any harm has befallen them in the ten years since the riots subsided. See, e.g., Vente v. Gonzales, 415 F.3d 296, 303 (3d Cir. 2005).

In its opinion in this case, the Board relied on our decision in Lie, 396 F.3d 530, in holding that the mistreatment of ethnic Chinese Christians in Indonesia was not systemic, pervasive, or organized enough to constitute a pattern or practice of persecution. There, we relied on the 1999 Country Report on Indonesia in finding that the evidence did not compel the conclusion that violence against Chinese Christians rose to the level of a pattern or practice of persecution. Id. at 537-38. Following Lie, we left open the possibility that subsequent State Department reports might show a pattern or practice of

11

persecution of Chinese Christians in Indonesia, see <u>Sukwanputra v. Gonzales</u>, 434 F.3d 627, 637 n.10 (3d Cir. 2006), but neither the 2002 Country Report nor 2002 Religious Freedom Report compel this conclusion. Martadinata has failed to show how any recent evidence of record compels the conclusion that conditions in Indonesia have worsened since <u>Lie</u> to the extent that there now exists a pattern or practice of persecution of ethnic Chinese Christians in Indonesia. Accordingly, asylum and statutory withholding of removal appropriately were denied to him.

For the foregoing reasons, we will deny the petition for review.